UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAVID H.,[1]

     Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

20-CV-6194-LJV
DECISION & ORDER

---

On March 27, 2020, the plaintiff, David H. ("David"), brought this action under the Social Security Act. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On November 24, 2020, David moved for judgment on the pleadings, Docket Item 12; on February 18, 2021, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 15; and on March 11, 2021, David replied, Docket Item 16.

For the reasons stated below, this Court grants David's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the [Administrative Law Judge ('ALJ')] applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

**DISCUSSION**

David argues that the ALJ erred in failing to "properly account for [his] stress."[3] Docket Item 12-1 at 17. This Court agrees that the ALJ erred and, because that error was to David's prejudice, remands the matter to the Commissioner.

When a claimant suffers from significant stress, the ALJ must address how that stress might affect the claimant's ability to perform the specific job or jobs that otherwise fit his RFC profile. Indeed, "[b]ecause stress is 'highly individualized,'" an ALJ must "make specific findings about the nature of [a claimant's] stress, the circumstances that trigger it, and how those factors affect his ability to work." *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006) (citing SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985) (explaining that "[b]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job[,] . . . [and a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment")). "Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments." *Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y. 1996).

The Commissioner's own regulations illustrate and explain the issue:

> [a] claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. [F]or example, a busboy need only clear dishes from tables. But an individual with a severe mental

---

[3] David also argues that the Appeals Council erred in rejecting a letter written by his treating psychiatrist, Virginia A. Wholtmann, M.D. Docket Item 12-1 at 13. The Court does not reach this issue "because [it] may be affected by the ALJ's treatment of this case on remand." *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

> disorder may find unmanageable the demands of making sure that he removes all the dishes, does not drop them, and gets the table cleared promptly for the waiter or waitress. Similarly, an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons.

SSR 85-15, 1985 WL 56857, at *6 (emphasis in original). So when stress affects a claimant's ability to function, the ALJ must address any limitations explicitly and uniquely for that claimant. *Stadler*, 464 F. Supp. 2d at 189.

Here, Adam Brownfeld, Ph.D., completed a psychological evaluation of David in October 2016. He found that David's schizophrenia rendered him "mildly limited in relating adequately with others" and "markedly limited in appropriately dealing with stress." Docket Item 10-8 at 88. He also found that these limitations "may significantly interfere with [David's] ability to function on a daily basis." *Id.*

The ALJ afforded Dr. Brownfeld's opinion "substantial weight" because "Dr. Brownfeld is familiar with the [r]egulations[ and] personally examined the claimant . . . [and because t]he opinion is [] generally consistent with the overall record." Docket Item 10-2 at 24. But the ALJ formulated a residual functional capacity ("RFC") that did not incorporate Dr. Brownfeld's opinion that David was "markedly limited in appropriately dealing with stress." Indeed, the RFC did not include any specific stress limitation, and the ALJ made no findings about David's stress—let alone "specific findings about the nature of [his] stress, the circumstances that trigger it, and how those factors affect his ability to work."[4] *See Stadler*, 464 F. Supp. 2d at 189.

---

[4] The ALJ found that David had the mental RFC to "perform simple, routine, [] repetitive tasks but not at a production rate pace[,] . . . [and] simple work-related decisions[; and h]e can have occasional interaction with supervisors, coworkers, and

4

The failure to address David's stress leaves significant gaps in the ALJ's decision and raises significant questions about whether David could perform the jobs that the ALJ found him able to perform. For example, although the ALJ found that David had a moderate limitation in interacting with others and acknowledged that David "reported social isolation and paranoia," see Docket Item 10-2 at 19, the ALJ did not make any specific findings about how David's stress affected that behavior or what circumstances triggered it, see Stadler, 464 F. Supp. 2d at 189. Likewise, the ALJ did not ask about, and the vocational expert ("VE") did not address, the mental demands of the jobs that the VE identified, how stressful those jobs are, or how "marked[]" stress limitations might affect the performance of those jobs.[5] See Docket Item 10-2 at 92-96.

In other words, the ALJ not only failed to address David's stress and what might cause it, he failed even to consider how that stress might impact his RFC. See Stadler, 464 F. Supp. 2d at 189. For that reason, and because the marked limitations caused by David's stress might well affect his ability to perform the work that the ALJ found he could do, the ALJ erred and his error was not harmless. See Welch, 923 F. Supp. at 20-21 ("Even if this Court were to accept the ALJ's general conclusion that [the] plaintiff has the residual functional capacity to perform simple, low-stress work, this Court is still unable to determine whether she can perform her past relevant job as a cleaner without

---

the public." Docket Item 10-2 at 20. Although those limitations might address stress in some general way, they are far from the detailed, stress-specific analysis required in cases like this. See Stadler, 464 F. Supp. 2d at 189.

[5] When questioned by David's attorney, the VE said that "limitation[s] of no interactions with supervisors" and an inability to work near others would preclude competitive employment. Docket Item 10-2 at 95, 98. But other than that, the VE did not address stress or its impact on David's ability to work, such as the mental demands of the jobs that she identified or the levels of stress that they would entail.

any knowledge regarding the demands of that job. Here, the ALJ needed to probe into the stress level of [the] plaintiff's past relevant work as a cleaner in order to determine if, in fact, she currently is capable of performing that job.") (citation omitted)).

The Commissioner argues that the ALJ was not required to adopt everything in Dr. Brownfeld's opinion and that he was permitted to reject the stress limitation. Docket Item 15-1 at 8. And the legal principle stated by the Commissioner is correct. *See Younes v. Colvin*, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) ("There is no absolute bar to crediting only portions of medical source opinions."). But if the ALJ rejected part of Dr. Brownfeld's opinion—such as the marked stress limitation—the ALJ was required to explain what he was doing and why. *See Raymer v. Colvin*, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (explaining that when "an ALJ . . . chooses to adopt only portions of a medical opinion[, he] must explain his . . . decision to reject the remaining portions"). The ALJ did not do that here.

In fact, the ALJ suggested that he meant to adopt the stress limitation. *See* Docket Item 10-2 at 24 ("The marked limitations noted by Dr. Brownfeld have also been accommodated by limiting the claimant to simple work with simple work-related decisions and only occasional interaction with others."). But merely limiting David to simple work and only occasional interaction with others without explicitly addressing his marked stress limitations is legally insufficient to account for David's stress. *See Stadler*, 464 F. Supp. 2d at 189 (requiring an ALJ "make specific findings about the nature of [a claimant's] stress, the circumstances that trigger it, and how those factors affect his ability to work") (citing SSR 85-15, 1985 WL 56857, at *6)); *Burke v. Berryhill*, 2018 WL 1940260, at *4 (Apr. 25, 2018) (finding that the ALJ erred by giving "great

6

weight" to a physician's opinion that the claimant had "moderate[] to marked[]" limitations in appropriately dealing with stress but limiting the claimant to "unskilled work involving only simple, routine[,] and repetitive tasks" without "perform[ing] the requisite individualized assessment of [the claimant's] limitations in dealing with stress"); *Booker v. Colvin*, 2015 WL 4603958, at *12 (July 30, 2015) (remanding where the ALJ limited the claimant to a "low-stress" environment without making "specific findings concerning the nature of [the claimant's] stress, the circumstances that trigger it, and how those factors affect his ability to work"); *Haymond v. Colvin*, 2014 WL 2048172, at *9 (W.D.N.Y. May 19, 2014) (finding that the RFC's "restricting [the p]laintiff to unskilled work in a 'low stress, low contact' environment[] did not adequately take into account the functional limitations caused by her various severe mental impairments on her ability to deal with everyday stressors").

So the Commissioner's argument that "[t]he ALJ accounted for [David's] mental limitations . . . by limiting him to performing only simple, routine, and repetitive tasks, not at a production pace; simple work-related decisions; and only occasional interaction with supervisors, coworkers, and the public," *see* Docket Item 15-1 at 7, is plainly incorrect. None of those limitations "expressly account[ed] for [David's] specific stress limitations." *See Cooley v. Berryhill*, 2017 WL 3236446, at *12 (W.D.N.Y. July 31, 2017). And for that reason, none of those limitations adequately addressed how David's stress might affect his ability to work.

Finally, it is worth noting that Dr. Brownfeld was not the only provider who opined that David had a significant stress problem. *See, e.g.*, Docket Item 10-7 at 6 (consultative psychologist Dennis M. Noia, Ph.D., observing that "[David] appears to be

7

having some difficulty of dealing with stress); Docket Item 10-8 at 96, 101 (progress notes from Genesee County Medical Health Services rating David as "[m]oderate[ly]" impaired in the following functions: "diminished social interaction and activities [], distance and argumentativeness with people [], paranoia [], [and] poor judgment in social situations"); Docket Item 10-9 at 6, 13, 27, 53, 65, 85 (same). So if the ALJ rejected Dr. Brownfeld's stress limitation, he apparently based that decision on his own lay judgment and not another medical opinion. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (explaining that an ALJ's decision to reject a medical opinion must be based on other medical evidence and not the ALJ's lay judgment). And that was error as well.[6]

In sum, the ALJ failed to undertake the required individualized stress inquiry before he concluded that David was not disabled. On remand, the ALJ must explicitly consider how David's stress tolerance could affect his RFC as well as how stress might affect David's ability to perform the specific job or jobs that otherwise fit his RFC profile.

---

[6] If the ALJ rejects an opinion or part of an opinion on a particular limitation, the ALJ must base that decision on other medical evidence and may not replace the medical opinion with the ALJ's lay judgment. *See Balsamo*, 142 F.3d at 81 ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for [a] competent medical opinion. While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him.") (citation and original alterations omitted).

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 15, is DENIED, and David's motion for judgment on the pleadings, Docket Item 12, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: July 6, 2021
Buffalo, New York

*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE